# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

BECKY LEAH HAZELWOOD,

        Plaintiff,

  v.             6:12-CV-798
                  (DNH/ATB)

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

PETER W. ANTONOWICZ, ESQ., for Plaintiff
ANDREEA LECHLEITNER, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.   PROCEDURAL HISTORY

Plaintiff protectively filed applications for both Social Security Disability Benefits and Supplemental Security Income ("SSI") benefits on November 5, 2009. (Administrative Transcript ("T") 50). The applications were denied on April 21, 2010, and plaintiff requested a hearing. (T. 59-64, 65). On April 14, 2011, plaintiff appeared before Administrative Law Judge ("ALJ") Elizabeth W. Koennecke, who denied plaintiff's claim in a decision dated July 26, 2011. (T. 15-23). Plaintiff requested review of ALJ Koennecke's decision, and submitted additional evidence to the Appeals Council. (T. 106, 297-352). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on

May 1, 2012. (T. 1-5).

## II.    ISSUES IN CONTENTION[1]

Plaintiff makes the following arguments:

(1)    The Commissioner erred in determining plaintiff's Residual Functional Capacity ("RFC"). (Pl.'s Br. at 9-16).

(2)    The Commissioner improperly evaluated plaintiff's credibility with respect to her allegations of disabling pain and fatigue. (Pl.'s Br. at 16-20).

Defendant argues that the Commissioner's decision is supported by substantial evidence and must be affirmed.  Defendant also argues that a remand is not required to consider the evidence that plaintiff's counsel submitted for the first time to the Appeals Council and that was not before the ALJ. (Def.'s Br. at 14-17).  Although this court concludes that most of the ALJ's analysis is supported by substantial evidence, I am recommending a remand for further analysis of plaintiff's ability to work with the public to the extent necessary to perform her prior work as a cashier.

---

[1] Plaintiff's counsel lists three arguments in the "Issues Presented" section of his brief. (Pl.'s Br. at 1).  The first argument is that the Commissioner erred in determining plaintiff's RFC, and the third argument is that the Commissioner improperly evaluated plaintiff's claims of pain and fatigue. The argument listed as (2) states that the Commissioner improperly determined that plaintiff's impairment did not meet the severity of an impairment listed in Appendix 1 of the Social Security Regulations. 20 C.R.R. Pt. 404, Subpt. P, App. 1.  Counsel cites section 14.02 of the Listings, which is the section involving "Lupus."  There is no argument in the brief relating to the listings, and plaintiff does not claim to have Lupus.  Section 12.04 (this would be a simple transposition of the numbers) deals with Affective Disorders and is one of the listed impairments that the ALJ considered in plaintiff's case, but there is no argument in the text of plaintiff's brief claiming that plaintiff meets a listed impairment.  The court will only list the two arguments for which there is a corresponding section in plaintiff's brief and notes that there is no basis for making a Listing argument in any event.

## III.  APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the Commissioner  will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to

perform his past work, the Commissioner then determines whether there
is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697

F3d 145, 151 (2d Cir. 2012)); *see* 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff has

the burden of establishing disability at the first four steps.  However, if the plaintiff

establishes that her impairment prevents her from performing her past work, there is a

"limited burden shift to the Commissioner" to "show that there is work in the national

economy that the claimant can do."  *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir.

2009) (clarifying that the burden shift to the Commissioner at step five is limited, and

the Commissioner "need not provide additional evidence of the claimant's residual

functional capacity"); *Selian*, 708 F.3d at 418 & n.2.

###    B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision. *Selian v. Astrue*, 708 F.3d at 417 (quoting *Talavera v. Astrue*,

697 F.3d at 151; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir.

2012); 42 U.S.C. § 405(g)).  Substantial evidence is "'such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion.'" *Talavera*, 697

F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It must be

"more than a scintilla" of evidence scattered throughout the administrative record. *Id.*

However, this standard is a very deferential standard of review " – even more so than

the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

In order to determine whether an ALJ's findings are supported by substantial

evidence, the reviewing court must consider the whole record, examining the evidence from both sides, "'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Petrie v. Astrue*, 412 F. App'x 401, 403-404 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (citing *Williams*, *supra*).

## IV.   FACTS

Plaintiff's counsel has stated the medical and vocational facts in his brief. (Pl.'s Br. at 3-6). Defense counsel has incorporated plaintiff's summary, "with the exception of any inferences or conclusions asserted by plaintiff." (Def.'s Br. at 1) (Dkt. No. 14). Defense counsel has also incorporated the facts as stated in the ALJ's decision. (*Id.* at 2) This court will also incorporate the facts as stated by both counsel, with any exceptions as noted in the discussion below.

## V.   ALJ's DECISION

Plaintiff met her insured status requirement for purposes of her DIB application through December 31, 2009, and had not engaged in substantial gainful activity since her stated onset date of October 1, 2008. (T. 17). The ALJ found that plaintiff had two severe impairments: bipolar disorder and chronic lumbar strain, but that neither of the two severe impairments, alone or in combination, met or medically equaled the severity of a Listed Impairment. (T. 17-18).

In considering whether plaintiff's impairments met or medically equaled the severity of a listing, the ALJ considered sections 1.04 (Disorders of the Spine) and 12.04 (Affective Disorders) of the Listing of Impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.04, 12.04. For purposes of section 1.04, the ALJ found that there was no medical evidence showing that plaintiff had a disorder that compromised her nerve roots or the spinal cord, together with any of the other required clinical findings. (T. 18). For purposes of plaintiff's mental impairment, the ALJ found that plaintiff's bipolar disorder did not result in at least two marked impairments in the following areas: activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace. Plaintiff also did not suffer from repeated episodes of decompensation, each of extended duration. (T. 18).

In making the determination that plaintiff's mental impairment did not meet the severity of a listed impairment, the ALJ reviewed plaintiff's testimony and discussed the limitations that she did have. (T. 18-19). Once the ALJ determined that plaintiff's mental disorder was not the equivalent of an impairment listed in section 12.04, the ALJ noted that this finding was not an RFC assessment because an RFC would require a more detailed itemization of various functions. (T. 19). Proceeding to Step 4, in the context of plaintiff's RFC, the ALJ stated that his RFC analysis reflected "the degree of limitation . . . found in the 'paragraph B' mental function analysis." (*Id.*)

The ALJ's RFC analysis incorporated both plaintiff's mental and physical impairments. (T. 9). The ALJ found that plaintiff retained the physical RFC for light work, including the ability to lift no more than 20 pounds at a time, with frequent

lifting or carrying of objects weighing up to 10 pounds. She could stand for 6 hours, walk for 6 hours, and sit for 6 hours out of an 8-hour work day. She could understand, carry out, and remember "simple instructions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine work setting." (*Id.*)

In making the RFC determination, the ALJ reviewed the medical evidence, giving various amounts of weight to the reports of the plaintiff's physicians and the consultative physicians. (T. 19-22). The ALJ rejected the restrictive RFC evaluation submitted by Vivienne Taylor, M.D., plaintiff's treating physician because it was inconsistent with the plaintiff's medical records, including Dr. Taylor's contemporaneous treatment notes. (T. 21). The ALJ gave some weight to the opinions of Dr. T. Andrews, Kristen Barry, Ph.D., and Dr. Roberto Rivera because they were "consistent with the entirety of the record." (*Id.*)

The ALJ found that Dr. Taylor never conducted a mental examination of the plaintiff and never documented the "significant anxiety" that she included in her RFC. The ALJ rejected one of Dr. Taylor's reports because most of the opinion seemed to be based only upon plaintiff's subjective report of back pain. Most of Dr. Taylor's treatment notes show "minimal, if any, abnormalities, and only one report contained the statement that plaintiff had a "limited range of motion." (T. 21-22).

The ALJ found that plaintiff could perform her prior work as a cashier, noting that a cashier position requires that a person be able to lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently, and a negligible amount, frequently.

(T. 22).  The ALJ also noted that cashier work may involve walking and/or standing frequently in addition to dealing with people. (*Id.*)  The ALJ found that the plaintiff would be able to perform the cashier's position as she described performing the job, or as it is generally performed in the national economy. (T. 22).  Therefore, the ALJ found that plaintiff was not disabled prior to reaching Step 5 of the disability analysis. (*Id.*)

Plaintiff's counsel submitted a substantial number of medical reports to the Appeals Council that were not before the ALJ,[2] however, the Appeals Council declined to review plaintiff's case, notwithstanding the additional information.

## VI.   RFC/TREATING PHYSICIAN/PAST RELEVANT WORK

### A.   Legal Standards

#### 1.   RFC

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  An ALJ must specify the functions plaintiff is capable of performing, and *may not simply make conclusory statements regarding a plaintiff's capacities. Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183; *Sullivan v. Secretary of HHS*, 666 F.

---

[2] The court notes that some of the reports submitted to the Appeals Council were duplicative of reports that were already in the record.

Supp. 456, 460 (W.D.N.Y. 1987)).  RFC can only be established when there is

substantial evidence of each physical requirement listed in the regulations. *Id.*  The

RFC assessment must also include a narrative discussion, describing how the evidence

supports the ALJ's conclusions, citing specific medical facts, and non-medical

evidence. *Trail v. Astrue*, 5:09-CV-1120, 2010 WL 3825629 at *6 (N.D.N.Y. Aug. 17,

2010) (citing Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7).

Although the RFC determination is reserved for the commissioner, the RFC

assessment is still a medical determination that must be based on medical evidence of

record, and the ALJ may not substitute his own judgment for competent medical

opinion. *Walker v. Astrue*, No. 08-CV-828, 2010 WL 2629832, at *6 (W.D.N.Y. June

11, 2010) (citing 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)), *RR adopted by* 2010

WL 2629821 (W.D.N.Y. June 28, 2010); *Lewis v. Comm'r of Soc. Sec.*, No. 6:00-CV-

1225, at *3 (N.D.N.Y. Aug. 2, 2005)).  The ALJ is not qualified to assess a plaintiff's

RFC "on the basis of bare medical findings," and where the medical findings in the

record merely "diagnose" a plaintiff's impairments and do not relate those diagnoses

to a specific RFC, an ALJ's determination of RFC without a medical advisor's[3]

assessment is not supported by substantial evidence. *Id.* (citing *Deskin v. Comm'r of*

*Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008); *Isaacs v. Astrue*, No. 1:08-CV-

828, 2009 WL 3672060, at *11 (S.D. Ohio 2009) (the ALJ erred in determining an

RFC without reference to a medically determined RFC, bridging the raw medical data

---

[3] In addition to the plaintiff's own physicians and other medical sources, the ALJ may rely upon a "medical advisor" who is a non-examining state agency "medical consultant" or an examining consultative physician to whom the plaintiff was sent at agency expense. *See Walker v. Astrue*, 2010 WL 2629832 at *6-7.

to specific functional limitations)).

Although there are circumstances in which the ALJ may render a "common sense" judgment about a plaintiff's functional capacity without a physician's assessment, these circumstances occur when there is a relatively small degree of impairment. *Id.* (citing *Manso-Pizarro v. Sec. of Health & Human Services*, 76 F.3d 15, 17 (1st Cir. 1996)).

### 2. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 416.927(d). The ALJ must properly analyze the reasons that the report is rejected. *Halloran*, 362 F.3d at 32-33. An ALJ may not arbitrarily substitute his own judgment for competent medical opinion. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999).

### 3. Past Relevant Work

Once the ALJ determines plaintiff's RFC, the ALJ must then consider at Step 4 of the disability analysis, whether plaintiff can perform her past relevant work. The ALJ compares plaintiff's RFC with the duties of the specific job as plaintiff previously performed it and the functions and duties of the job as it is performed in the national economy. *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citing *Jock v.*

*Harris*, 651 F.2d 133, 135 (2d Cir. 1981); SSR 82-62, 1982 WL 31386 (SSA 1982)).

Plaintiff carries the burden to show that she cannot perform either type of work. *Id.*

## B. Application

### 1. Physical

The ALJ found that plaintiff could return to her former work as a cashier. The ALJ found that plaintiff could essentially perform the physical requirements of light work, required for this job. (T. 19). The ALJ rejected Dr. Taylor's very restrictive RFC physical[4] evaluation in favor of the report written by consulting physician, Dr. Roberto Rivera. The ALJ's decision is supported by substantial evidence because the treating physician's analysis is inconsistent with other medical evidence of record and inconsistent with Dr. Taylor's own contemporaneous notes.

Dr. Taylor's RFC evaluation is not supported by medical findings. Dr. Taylor has diagnosed "chronic low back pain," but the record contains no objective signs of any impairment to plaintiff's spine, and x-rays taken on March 10, 2010 showed that the height of the vertebral bodies and disc spaces were well maintained. (T. 230). The diagnostic impression was a "negative study." (*Id.*) Dr. Taylor's reports are generally very short, with no physical examination findings. Dr. Taylor simply lists a diagnosis of "chronic low back pain" and prescribes pain pills for plaintiff. (T. 194-96).

On May 15, 2009, plaintiff was complaining of neck and mid-back pain that was radiating down to her low back. She reported having difficulty bending, lifting, walking, and sitting. (T. 199). Dr. Taylor noted tender paraspinal muscles of the

---

[4] Dr. Taylor submitted both physical and mental RFC evaluations.

cervical thoracolumbar area and tenderness in her right shoulder. (*Id.*)  On June 26, 2009, Dr. Taylor noted that plaintiff was complaining of neck spasms and numbness and tingling in her neck, and diagnosed cervical thoracolumbar strain with cervical syndrome. (T. 197).

On December 4, 2009, Dr. Taylor mentioned that plaintiff had "anxiety, depression, and low back pain, but did not list any physical findings with respect to the back pain. (T. 262).  The doctor indicated only that plaintiff was having side effects with the Trazodone and did not tolerate the Ultram, so the doctor prescribed Percoset, and continued the Mobic and Flexeril. (*Id.*)  Dr. Taylor's January 6, 2010, February 17, 2010, March 17, 2010, May 17, 2010, and July 15, 2010 reports do not even mention plaintiff's back pain, nor did the doctor perform any particular tests to determine or discuss the cause of any pain. (T. 257-61).  On October 15, 2010, Dr. Taylor reported that plaintiff had anxiety/depression and chronic low back pain, but only indicated that she was alert, in no distress, and continued her on the Percoset as needed for her pain. (T. 256).

None of these reports would indicate the degree of restriction that Dr. Taylor mentioned only one month later, in her November 18, 2010 RFC evaluation, which stated that plaintiff could not lift or carry more than 10 pounds occasionally or sit for more than two hours during an eight-hour day. (T. 272-73).  A review of the November 18, 2010 RFC shows that Dr. Taylor's assessment is also internally inconsistent. (T. 273).  Dr. Taylor checks a box indicating that plaintiff can "stand" for *three hours at one time*, but then checks another box indicating that plaintiff can only

stand for *one hour "total"* in an eight hour day. (*Id.*)

The ALJ found that Dr. Roberto Rivera's consultative examination contradicted Dr. Taylor's findings. (T. 21). Dr. Rivera performed a complete examination, stating that plaintiff's gait was normal, she could walk on her heels and toes without difficulty, although she did complain of *some* lower back pain. (T. 227). She had full flexion and extension of her thoracic and lumbar spine, and full bilateral lateral flexion and rotary movements. (T. 228). Although she did complain of pain, she had "completely normal ROMs [ranges of motion]." There was no spinal or paraspinal tenderness; no SI joint or sciatic notch tenderness; and no spasm, no scoliosis, or kyphosis. She did complain of pain during her straight leg raising test, but had no trigger points, a full range of motion in her hips, knees, and ankles, with 5/5 strength, and no muscle atrophy. (*Id.*)

In his narrative report, Dr. Rivera appears to question the plaintiff's credibility when he states that "[plaintiff] states that she can only walk less than one-half block before the back pain causes her to have to stop. On the other hand, she can walk up two flights of stairs, she states, before the back pain would hurt her." (T. 226). Dr. Rivera also stated that "[i]t is not clear as to whether she has ever had an MRI scans [sic] of [her back], but certainly with regard to the physical examination that I have performed, it is not likely that she would require an MRI scan." (*Id.*) Essentially, Dr. Rivera found that plaintiff had some pain, but did not believe that the pain was as limiting as plaintiff suggested. The ALJ correctly stated that Dr. Rivera opined that plaintiff had "no limitations in lifting and standing, mild limitations in carrying and

sitting, and mild to moderate limitations in walking, pushing, and pulling. (T. 228).

Thus, the information before the ALJ contains substantial evidence to reject Dr.

Taylor's restrictive RFC and support the ALJ's determination that plaintiff could

physically perform light work.

Plaintiff also argues that the Appeals Council should have considered the

additional evidence sent by plaintiff's counsel to find that plaintiff was disabled. The

court notes, however that these reports do not support Dr. Taylor's restrictive RFC. In

fact, Dr. Taylor's July 19, 2011 report states that plaintiff was "following up for

anxiety/depression [and] chronic back pain," but her assessment states that plaintiff's

"chronic low back pain [was] stable without meds currently." (T. 352).

In the evidence submitted to the Appeals Council, there are also records from a

new physician, Dr. Muftah A. Kadura, M.D. (T. 340-49). However, these records

consist of forms that have check marks next to various symptoms, with very little

writing. In one of these reports, dated December 15, 2011, Dr. Kadura states that

plaintiff has a complaint of back pain, and that she was there for her "monthly visit"

for medications. In the "impression" section of the form, Dr. Kadura wrote: myalgia,

neuralgia, back pain, and insomnia. The doctor indicated that he prescribed Percoset,

however, there is no indication that plaintiff's condition was any different than it had

been all along, or that this information would have changed the ALJ's decision.

## 2.      Mental

In addition to finding that the plaintiff could physically perform the functions

required for light work, the ALJ found that plaintiff could understand, carry out, and

remember simple instructions, respond appropriately to supervision, co-workers, and ususal work situations, and deal with changes in a routine work setting. (T. 19). Plaintiff argues that, having found that plaintiff's bipolar disorder was severe, the Commissioner "must" attribute some limitations in the ability to basic work. (Pl.'s Br. at 10). Although plaintiff argues that the ALJ did not attribute mental limitations to plaintiff's ability to work, this court does not agree.

The "presence of an impairment is . . . not in and of itself disabling within the meaning of the Act." *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995) (citations omitted). Using the psychiatric review technique, required by the regulations,[5] the ALJ found that plaintiff had limitations based on her mental impairment, but that those limitations would not preclude her from performing her former occupation. As with plaintiff's physical limitations, the ALJ rejected the RFC evaluations completed by plaintiff's treating physician, Dr.Taylor, because the stated limitations were not consistent with her own treatment notes, and Dr. Taylor never actually performed a mental status examination on plaintiff. (T. 21).

The ALJ's rejection of Dr. Taylor's opinion is supported by substantial evidence. The evidence that plaintiff's counsel submitted to the Appeals Council would not change this finding. On November 29, 2010, February 28, 2011, May 26, 2011, November 21, 2011, psychiatrist, Dr. Florica Ochotonena, reported that plaintiff's mood was better. (T. 312-16). On May 26, 2011, Dr. Ochotorena stated that plaintiff's medication was working well, she had no outbursts, her mood was stable,

---

[5] 20 C.F.R. § 404.1520a; 416.920a.

and she was sleeping well. (T. 314). In August of 2011, plaintiff went to Idaho to visit her children. (T. 313). During the August 22, 2011 examination, Dr. Ochotonena found that plaintiff was alert, her attitude was appropriate, her mood euthymic, her affect appropriate, her thought processes were goal directed, her memory intact, her attention was good, her impulse control intact, her insight intact, and her judgment was intact. (*Id.*) None of the findings by Dr. Ochotonena would suggest extreme or even marked mental limitations.[6]

The ALJ stated that gave "some weight" to the opinions of Dr. Andrews and Ms. Barry. (T. 21). The ALJ stated that on April 20, 2010, T. Andrews, a non-examining medical consultant opined that the plaintiff "'should be able to perform entry level jobs not dealing with the public.'" (T. 21). Dr. Barry, the consultative examiner, found that plaintiff was able to follow and understand simple directions and instructions and maintain her attention and concentration fairly well. (T. 21, 224). Dr. Barry did not comment on plaintiff's ability or inability to deal with the public.

The ALJ is entitled to rely upon consultative and reviewing physicians such as

---

[6] The court also notes that plaintiff's counsel submitted to the Appeals Council, reports and a mental RFC evaluation written by social worker, Helen Shulkin. (T. 304-307). The RFC is very restrictive and is inconsistent with much of the other evidence of record. As a social worker, Ms. Shulkin is not an acceptable medical source for purposes establishing an impairment, according to the Social Security regulations. 20 C.F.R. § 404.1513 (d)(3). Reports of social workers may be considered in determining the extent of a plaintiff's limitations; however, Ms. Shulkin's opinion is inconsistent with the opinions of Dr. Ochotonena, who was examining plaintiff at the same time. On September 6, 2011, Ms. Shulkin checked a blank on the mental RFC form, indicating that plaintiff has hallucinations, delusions or paranoid thinking, thoughts of suicide, and difficulty concentrating or thinking. (T. 307). On August 22, 2011, Dr. Ochotonena stated that plaintiff's mood was stable and she had gone to Idaho to visit her children. (T. 313). She had no hallucinations, appropriate affect, good attention, intact memory, good insight and intact judgment. (*Id.*) Ms. Shulkin's reports would not have affected the ALJ's decision.

T. Andrews. *See Hudson v. Colvin*, 5:12-CV-44, 2013 WL 1500199, at *12 (N.D.N.Y. March 21, 2013) (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983); *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993). *Accord Netter v. Astrue*, 272 F. App'x 54, 55-56 (2d Cir. 2008)), *RR adopted by* 2013 WL 1499956 (N.D.N.Y. April 10, 2013). The problem with the ALJ's analysis is that while she states that she places "some weight" on the report of T. Andrews, indicating that plaintiff could perform entry level work "not dealing with the public," the ALJ then finds that plaintiff can perform her previous work as a cashier, an occupation that is *constantly* dealing with the public.

While the ALJ may have had a reason for finding that plaintiff can work with the public, the ALJ does not make it clear which report she relied upon to make the finding. She gave T. Andrews some weight, and specifically mentioned the doctor's statement that plaintiff should work in an occupation where she would not be dealing with the public. (T. 21). The ALJ properly rejected Dr. Taylor's overly restrictive RFC, stating that plaintiff had an "extreme" limitation in dealing with the public. (*See* T. 295 – Taylor 4/12/11 – Mental RFC).[7] However, there are no other medical reports, consultative or otherwise, that assess plaintiff's ability to work with the public to the extent necessary to perform her past work as a cashier.

The ALJ is not always required to discuss each RFC factor. *See Drennen v. Astrue*, No. 10-CV-6007, 2012 WL 42496, at *4-5 (W.D.N.Y. Jan. 9, 2012) (finding

---

[7] The record contains another mental RFC from Dr. Taylor, containing the same extreme restriction to dealing with the public, but the second RFC was dated September 23, 2011, was one of the new documents submitted to the Appeals Council and was not before the ALJ. (T. 299).

that the failure to conduct a function by function analysis may be harmless error and citing cases, but noting that the Second Circuit has not decided the issue).  However, as stated above, the ALJ must have some *medical* basis for her conclusion that plaintiff could perform the functions of a cashier's job, whether as she performed it or as it is performed in the national economy. *Walker v. Astrue, supra.*  In fact, the ALJ cites the Dictionary of Occupational Titles ("DOT") description of a cashier, which specifically states that "cashier work can involve walking and/or standing frequently and dealing with people." (T. 22) (citing DOT #:211.462-010, SVP 2, Light)).

Because this court cannot determine how the ALJ concluded that plaintiff could deal with the public sufficiently to perform her prior work, the Commissioner's decision is not supported by substantial evidence and should be remanded for a further evaluation of plaintiff's mental abilities regarding her ability to work with the public.[8]

## VII.  CREDIBILITY

### A.    Legal Standards

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96

---

[8] The court notes that the ALJ stopped at Step 4 of the disability evaluation because she found that plaintiff could return to her old job.  On remand, the Commissioner may determine that plaintiff may still return to her previous work if there is evidence showing that she may still be able to work with the public, or the Commissioner may proceed to Step 5 and determine whether plaintiff may do other light work in the national economy that does not require constant contact with the public.

CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).  To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record.  *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ."  20 C.F.R. § 404.1529(a).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.  *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  *Id.* § 404.1529(c)(3).

## B. Application

Plaintiff argues that the ALJ erred in rejecting the extent of plaintiff's claims of disabling pain and other symptoms. Counsel states that plaintiff's treating physicians did not question her credibility, nor did they "make any suggestion that the Plaintiff exaggerated her symptoms." (Pl.'s Br. at 16-17). However, the court notes that Dr. Rivera appeared to question plaintiff's credibility when she told him that she could only walk one half block before experiencing pain, but could walk up two flights of stairs. (T. 226). The ALJ stated that plaintiff's medications stabilize her moods, allowing her to participate in a wide variety of activities. (T. 20). In support of this statement, the ALJ cites to medical records as well as plaintiff's own hearing testimony. The ALJ also cited the lack of objective findings of any significant back impairment and the absence of limitations upon physical examination. (T. 20).

The ALJ then stated that plaintiff's credibility was questionable because she claimed to have a headache during the hearing that was 10 out of 10 in terms of pain, but was able to testify lucidly and follow all directions. (T. 20). The ALJ stated that she could not accord plaintiff's complaints of pain any significant weight "if she can behave in this fashion while complaining of 10/10 pain." (*Id.*) Although in certain circumstances, the Second Circuit has stated that the ALJ's own observations of the individual should only be assigned "limited weight," often referring to these observations as an impermissible "sit and squirm test,"[9] the regulations specifically

---

[9] The impropriety of a "sit and squirm" test was articulated in *Aubeuf v. Schweiker*, 649 F.2d 107, 113 (2d Cir. 1981) (stating that serious questions are raised "with respect to the propriety of subjecting claimants to a 'sit and squirm index,' and with respect to rendition by the ALJ of an expert medical opinion which is beyond his competence). *See also Menard v. Astrue*, 2:11-CV-42, 2012 WL

provide that physical demeanor is one of several factors in considering disability. *See Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (citations omitted). In this case, the ALJ did not rely only upon her observations of plaintiff at the hearing and therefore did not commit any error in evaluating plaintiff's credibility.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the decision of the Commissioner be **REVERSED**, and the case **REMANDED PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) FOR A FURTHER ANALYSIS OF PLAINTIFF'S ABILITY TO PERFORM HER PRIOR WORK CONSISTENT WITH THIS OPINION**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.</u>** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: May 7, 2013

_____
**Hon. Andrew T. Baxter**
**U.S. Magistrate Judge**

---

703871, at *7 (D. Vt. Feb. 14, 2012) (discussing the impropriety of a "sit and squirm" index, but noting that the statement about plaintiff's demeanor by the ALJ was contrary to the medical evidence), *RR adopted by* 2012 WL 704376 (D. Vt. March 5, 2012).